# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1331 | **DATE** | 6/6/2003 |
| **CASE TITLE** | PATRICK E. SULLIVAN vs. JO ANNE B. BARNHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment [8-1] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 9 2003 date docketed | 10 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | WB docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 6/6/03 date mailed notice | |
| CB | courtroom deputy's initials | 03 JUN -9 AM 8:52 | PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 9 2003

| PATRICK E. SULLIVAN, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 03 C 1331 |
| v. | ) | Suzanne B. Conlon, Judge |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Patrick E. Sullivan ("Sullivan") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying social security disability benefits pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g). Sullivan moves for summary judgment pursuant to Fed. R. Civ. P. 56. The Commissioner fails to respond.

### PROCEDURAL BACKGROUND

Sullivan filed an application for disability insurance benefits on August 8, 2000. The Commissioner denied his claim and Sullivan timely requested a hearing before an Administrative Law Judge ("ALJ"). On October 4, 2002, the ALJ held a hearing where Sullivan, medical expert Dr. John B. Cavenagh and vocational expert Timothy Bobrowski testified. The ALJ found Sullivan not disabled and denied his application. The Appeals Council declined to review the case, rendering the ALJ's decision final. 20 C.F.R. § 404.955. Sullivan now seeks judicial review.

1



## STATEMENT OF FACTS

### I. Sullivan's Testimony

Sullivan, who is 47 years old, has worked only for short periods of time over the last fifteen years. R. 41-42. During the hearing, Sullivan could not remember the specifics of his previous employment. *Id.* According to Sullivan, his medical conditions prevent him from working. R. 46. Sullivan suffers from a back condition, Hepatitis C and depression. R. 57. Sullivan challenges the ALJ's findings only as to his alleged mental impairment.

At the hearing, Sullivan testified that he stays in the house and does not socialize. R. 41. He sleeps 16 hours a day, suffers from frequent panic or anxiety attacks and has suicidal thoughts. R. 51-52, 54. Sullivan claims he does not like being around other people and would rather be alone. R. 46. Sullivan sees a therapist once or twice a week for counseling and psychiatrist once a month for medication. R. 47-48.

During the hearing, the ALJ specifically questioned Sullivan regarding his drug and alcohol use. R. 58-60. Sullivan testified he had not used drugs for 25 years and had a beer "maybe once a month." R. 58-59.

### II. Medical Expert's Testimony

In reaching his decision, the ALJ relied upon Dr. Cavenagh's expert opinion. Dr. Cavenagh reviewed Sullivan's medical records, including several reports prepared at the Commissioner's request. R. 56-57. Specifically, Dr. Cavenagh relied on a report prepared by Dr. John F. Conran at the Commissioner's request and a psychiatric evaluation completed by Sullivan's treating psychiatrist, Dr. Gouttama. R. 57-58. During the hearing, Dr. Cavenagh pointed out that Dr. Conran's assessment was inconsistent with Dr. Gouttama's opinion:

> [Sullivan's] testimony referred today seems to substantiate that consultation with Dr. Conra[n]. There is just a slight disparity between different treating physicians as to

2

the severity. Dr. Conra[n]'s impression, I would have to say that his concept would
meet the listings for affective disorders, 12.04, A1, A, E, F, and H, B1, 2, 3, and 4
[phonetic].

\* \* \*

That conclusion apparently is not shared entirely by Dr. [Gouttama] so, that
discrepancy on the medical evidence.

R. 60.

Sullivan was evaluated by Dr. Conran on September 27, 2001. R. 211-214. After 45 minutes, Dr. Conran diagnosed Sullivan as having recurrent major depression with suicidal ideation. *Id.* Shortly thereafter, Dr. Gouttama found Sullivan to be "calm and friendly" with "no depression/anxiety." R. 264-267. In December 2001, Dr. Gouttama noted Sullivan "reinjured his back recently while he was doing volunteer work." R. 266. From January 2002 through his last report dated August 13, 2002, Dr. Gouttama found Sullivan to be friendly and cooperative with no indications of depression or anxiety. R. 254-263.

### III. Vocational Expert's Testimony

Vocational expert Timothy Bobrowski testified about Sullivan's residual functional capacity. R. 62-66. Residual functional capacity is a measure of what an individual can do despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Bobrowski determined a hypothetical worker of Sullivan's age, education and work history could perform a number of unskilled jobs, including hand packager, assembly work or product inspector. R. 64-65. Bobrowski noted that all jobs would be eliminated for a hypothetical worker with Sullivan's alleged antisocial tendencies. R. 65-66.

3

## DISCUSSION

### I. Standard of Review

Judicial review of the Commissioner's final decision is limited. The role of the reviewing court is to determine whether substantial evidence in the record as a whole supports the Commissioner's decision to deny benefits. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). "The findings of the Secretary, as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must affirm the Commissioner's decision if the decision is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimaint's position. 42 U.S.C. § 405(g). "Because the Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact, this Court may not decide the facts anew, re-weight the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000)(internal citations omitted).

### II. Disability Under the Social Security Act

To qualify for disability benefits under the Act, a claimant must be disabled within the meaning of the statute. The Act defines a disabled person as one who is unable to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant must have a severe impairment that renders him unable to perform his "previous work or any substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. A physical or mental

4

impairment is "an impairment that results from anatomical, physiological abnormalities which are demonstrable by medically acceptable clinical laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In situations where a mental impairment exists, the degree of functional loss resulting from the mental impairment must be determined.

The Act requires the factfinder to follow a five-step process to determine whether a claimant is disabled: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). Once the claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment (step three). If a claimant satisfies steps one and two but not step three, the claimant must establish step four. If step four is satisfied, the burden shifts to the Commissioner to satisfy step five. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

### III. The ALJ's Decision

Sullivan argues the ALJ's findings regarding his mental impairment are not supported by substantial evidence. Specifically, Sullivan claims the ALJ misinterpreted Dr. Cavenagh's opinion and improperly discounted Dr. Conran's report in finding that his depression did not meet the listing level for severity under step three. Sullivan further claims the ALJ improperly failed to consider his global assessment of functioning score in determining he is capable of performing any work in the national economy under step five.

### A. Step Three

In his decision, the ALJ noted that "Dr. Cavenagh testified that his review of the objective evidence alone, not considering the claimant's subjective testimony, indicated that the claimant's

5

alleged depression did not meet or medically equal the requirements of medical listing 12.04, for depression." R. 16. *See also* R. 20 ("Although Dr. Cavenagh is not a psychiatrist, he did indicate that in his opinion, the record did not support a finding that the claimant's depression and/or anxiety met or equaled the requirements of a listed impairment"). Contrary to the ALJ's determination, Dr. Cavenagh never offered an unequivocal opinion regarding Sullivan's depression. Rather, he testified:

> The testimony referred today seems to substantiate that consultation with Dr. Conra[n]. There is just a slight disparity between different treating physicians as to the severity. Dr. Conra[n]'s impression, I would have to say that his concept would meet the listings for affective disorders, 12.04, A1, A, E, F, and H, B1, 2, 3, and 4 [phonetic].
>
> * * *
>
> That conclusion apparently is not shared entirely by Dr. [Gouttama] so, that discrepancy on the medical evidence.

R. 60. Nevertheless, the ALJ's misunderstanding of Dr. Cavenagh's testimony does not warrant reversal.

As an initial matter, a treating physician's report must be given controlling weight over the report of a consulting examiner. 20 C.F.R. § 404.1527(d)(2). Dr. Gouttama treated Sullivan once a month for one year. R. 253-270. In contrast, Dr. Conran saw Sullivan once for forty-five minutes at the request of the Commissioner. R. 211-214. On this basis alone, the ALJ was entitled to give more weight to Dr. Gouttama's assessment than to the report prepared by Dr. Conran.

Moreover, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). As Dr. Cavenagh pointed out, Dr. Conran's report was inconsistent with Dr. Gouttama's treatment notes. R. 60. On September 27, 2001, Dr. Conran diagnosed Sullivan with recurrent major depression with some suicidal ideation. R. 211-14. In contrast, Dr. Gouttama found Sullivan to be "calm and friendly" with "no depression/anxiety" during this same time period. R. 264-267. Indeed, Dr. Gouttama

6

continually found Sullivan to be friendly and cooperative with no indications of depression or anxiety through his last report dated July 25, 2002. R. 254-270. Dr. Cavenagh testified he was unable to rationalize the doctors' differing assessments. R. 57-58.

The ALJ rationalized the difference by rejecting Sullivan's testimony as not credible. As the ALJ pointed out, Dr. Conran's report was "based largely upon what [Sullivan] told [him]." R. 20. The court will not upset an ALJ's credibility determination unless "patently wrong" because an ALJ "is in the best position to observe witnesses." *Powers*, 207 F.3d at 435.

In his motion, Sullivan does not dispute the bases for the ALJ's credibility determination. Indeed, the ALJ's decision to discredit Sullivan's testimony is supported by substantial evidence. The ALJ provided three reasons for rejecting Sullivan's testimony. First, Sullivan testified that he does virtually nothing and is incapable of being around others. Nevertheless, he reinjured his back doing volunteer work in December 2001. R. 21. Second, Sullivan testified that he had not used drugs in 25 years and had a beer "maybe once a month." R. 58-59. This testimony directly contradicts Sullivan's earlier testimony before the Commissioner. R. 72-76. In denying Sullivan social security benefits in 1997, the ALJ specifically found that Sullivan's drug and alcohol abuse, rather than depression, prevented him from performing working from February 2, 1993 through August 5, 1996. *Id.* Third, Sullivan's testimony regarding the severe nature of his depression is belied not only by Dr. Gouttama's report, but also by the absence of any hospitalization reports for his alleged depression or anxiety attacks. The ALJ is permitted to consider the lack of medical evidence as probative of the claimant's credibility. *See Powers*, 207 F.3d at 435 ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating [his] condition"). Based on this record, the ALJ was not patently wrong in discrediting Sullivan's testimony. *Powers*, 207 F.3d at 435. In light of Dr.

Conran's reliance on Sullivan's subjective complaints, the ALJ did not err in discounting Dr. Conran's report in favor of Dr. Gouttama's assessment. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)(ALJ may properly discount diagnosis based on discredited subjective testimony).

**B.     Step Five**

Nor did the ALJ err in determining Sullivan is capable of performing work in the national economy under step five. At the fifth step, the ALJ must consider the claimant's physical and mental impairments, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). In reaching his decision, the ALJ relied on Bobrowski's determination that a hypothetical worker of Sullivan's age, education and work history could perform a number of light, unskilled jobs, including hand packager, assembly work or product inspector. R. 22-23. The ALJ properly rejected Bobrowski's conclusions based on Sullivan's discredited testimony. *Diaz*, 55 F.3d at 308.

Nevertheless, Sullivan claims the ALJ failed to consider his global assessment of functioning ("GAF") score. "The ALJ is not required to comment on every piece of evidence presented." *Bailey v. Massanari*, No. 00 C 7506, 2001 WL 800068, at *5 (N.D. Ill. July 10, 2001). To the contrary, the court must give "the opinion a commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). Sullivan fails to explain how the consideration of a two-year old GAF score by an unknown doctor would have changed the ALJ's decision given his rejection of Sullivan's subjective testimony. R. 197, 199. Under these circumstances, Sullivan fails to demonstrate that the ALJ's factual findings were unsupported by substantial evidence in the record.

## CONCLUSION

The ALJ reasonably considered and rejected Sullivan's disability claim based on an appropriate determination of his credibility. Pursuant to 42 U.S.C. § 405(g), the Commissioner's final decision denying social security disability benefits is affirmed.

June 6, 2003                                       ENTER:

                                                                Suzanne B. Conlon
                                                                United States District Judge